STEVEN J. GROCKI
*Chief*
ROSS B. GOLDMAN
*Senior Appellate Counsel*
LAUREN S. KUPERSMITH
*Trial Attorney*
*Acting Deputy Chief*
Child Exploitation & Obscenity Section
U.S. Department of Justice, Criminal Division

    1301 New York Ave. NW
    11th Floor
    Washington, DC 20530
    Telephone:   (202) 532-4153
    Facsimile:   (202) 514-1793
    E-mail:    Ross.Goldman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>YUZEF YUNOSOVICH ABRAMOV,<br><br>      Defendant. | No. CR 2:14-00241-ODW<br>    CV 2:20-cv-9173-ODW<br><br><u>GOVERNMENT'S OPPOSITION TO</u><br><u>DEFENDANT'S MOTION TO DISMISS</u><br><br>Hearing Date:   January 26, 2026<br>Hearing Time:   10:30 am<br>Location:      Courtroom of the Hon.<br>                Otis D. Wright, II |

      Plaintiff United States of America, by and through its counsel of record, Senior Appellate Counsel Ross Goldman and Trial Attorney and Acting Deputy Chief Lauren Kupersmith, hereby files its Opposition to Defendant's Motion to Dismiss. This Opposition is based upon the attached memorandum of points and authorities, the files

and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 12, 2025                    Respectfully submitted,

STEVEN J. GROCKI
Chief

/s/ Ross B. Goldman
ROSS B. GOLDMAN
Senior Appellate Counsel

/s/ Lauren S. Kupersmith
LAUREN S. KUPERSMITH
Trial Attorney; Acting Deputy Chief

Child Exploitation & Obscenity Section
Criminal Division, U.S. Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

DESCRIPTION                                                                                      PAGE

TABLE OF AUTHORITIES ...............................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES .....................................................1

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................2

I.      THE INITIAL DISTRICT COURT PROCEEDINGS ............................................2

II.     THE DIRECT APPEAL ..........................................................................................3

III.    POST-CONVICTION PROCEEDINGS...................................................................4

IV.     POST-VACATUR PROCEEDINGS .......................................................................5

ARGUMENT ......................................................................................................................5

I.      ABRAMOV'S SPEEDY TRIAL CLAIMS LACK MERIT....................................5

        A.      The Speedy Trial Act .................................................................................5

                1.      Statutory Overview ..........................................................................5

                2.      The Court can, and should, extend the deadline from 70 to 180
                        days. ..................................................................................................6

                3.      If the Court disagrees with the government, it should dismiss
                        the indictment without prejudice. ....................................................9

        B.      The Sixth Amendment's Speedy Trial Clause ...........................................11

                1.      Length of Delay ...............................................................................12

                2.      Reasons for the Delay ......................................................................13

                3.      Assertion of the Right ......................................................................13

                4.      Prejudice...........................................................................................14

II.     ABRAMOV'S DEFECTIVE-INDICTMENT AND GRAND-JURY
        CLAIMS ARE UNAVAILING.................................................................................15

        A.      Abramov's defective-indictment claim lacks merit. ..................................15

                1.      The law-of-the-case doctrine forecloses Abramov's claim.............15

                2.      In any event, Abramov's claim fails on the merits..........................16

i

## TABLE OF CONTENTS (CONTINUED)

DESCRIPTION                                                                                                    PAGE

B.      Abramov's grand-jury claim lacks merit. ...................................................... 18

III.    Abramov's other arguments for dismissal lack merit. .......................................... 19

CONCLUSION .................................................................................................... 20

CERTIFICATE OF COMPLIANCE ..................................................................... 22

# TABLE OF AUTHORITIES

**CASES**

*Abramov v. United States*,
2025 WL 1779782 (9th Cir. 2025)................................................1, 4, 5, 17, 18, 20

*Abramov v. United States*,
589 U.S. 976 (2019)..........................................................................................4

*Bank of Nova Scotia v. United States*,
487 U.S. 250 (1988)........................................................................................18

*Barker v. Wingo*,
407 U.S. 514 (1972)....................................................................11, 12, 13, 14

*Betterman v. Montana*,
578 U.S. 437 (2016)..................................................................................11, 12

*Gonazalez v. Arizona*,
677 F.3d 383 (9th Cir. 2012) (en banc) .......................................................16

*Palmer v. Clarke*,
408 F.3d 423 (8th Cir. 2005) ........................................................................12

*People of Territory of Guam v. Viloria*,
1996 WL 104529 (D. Guam 1996)................................................................12

*United States v. Abramov*,
741 F. App'x 531 (9th Cir. 2018)...................................................3, 4, 15, 17, 18

*United States v. Allen*,
159 F.4th 625 (9th Cir. 2025) ........................................................................11

*United States v. Alvarez-Perez*,
629 F.3d 1053 (9th Cir. 2010) ....................................................................9, 11

*United States v. Boyajian*,
2023 WL 3915966 (9th Cir. 2023) ................................................................17

# TABLE OF AUTHORITIES (CONTINUED)

*United States v. Carpenter*,
781 F.3d 599 (1st Cir. 2015)......................................................................13

*United States v. Clark*,
435 F.3d 1100 (9th Cir. 2006) ..................................................................2, 3

*United States v. Colombo*,
852 F.2d 19 (1st Cir. 1988)........................................................................13

*United States v. Davis*,
336 F.3d 920 (9th Cir. 2003) .....................................................................16

*United States v. Du Bo*,
186 F.3d 1177 (9th Cir. 1999)....................................................................17

*United States v. Frey*,
735 F.2d 350 (9th Cir. 1984) .....................................................................7, 8

*United States v. Ginyard*,
572 F.Supp.2d 30 (D.D.C. 2008)...............................................................7, 8

*United States v. Gregory*,
322 F.3d 1157 (9th Cir. 2003) ..........................................................12, 13, 14

*United States v. Holley*,
986 F.2d 100 (5th Cir. 1993) ......................................................................7

*United States v. Hoskins*,
44 F.4th 140 (2d Cir. 2022) .......................................................................13

*United States v. Jingles*,
702 F.3d 494 (9th Cir. 2012) .....................................................................15

*United States v. Johnson*,
2019 WL 267875 (D. Oregon 2019) ..........................................................17

*United States v. Johnson*,
823 F. App'x 485 (9th Cir. 2020)...............................................................17

iv

**TABLE OF AUTHORITIES (CONTINUED)**

*United States v. Lam*,
    251 F.3d 852 (9th Cir. 2001) ....................................................................11, 12

*United States v. Larrazolo*,
    869 F.2d 1354 (9th Cir. 2003) ........................................................................19

*United States v. Lewis*,
    611 F.3d 1172 (9th Cir. 2010) ...................................................................10, 11

*United States v. Lindsay*,
    931 F.3d 852 (9th Cir. 2019) ..........................................................................17

*United States v. Lloyd*,
    125 F.3d 1263 (9th Cir. 1997) ..........................................................................6

*United States v. Loud Hawk*,
    474 U.S. 302 (1986)........................................................................................14

*United States v. Manning*,
    56 F.3d 1188 (9th Cir. 1995) ..........................................................................14

*United States v. Myers*,
    930 F.3d 1113 (9th Cir. 2019) ...................................................................13, 14

*United States v. Nance*,
    666 F.2d 353 (9th Cir. 1982) ..........................................................................12

*United States v. Navarro*,
    608 F.3d 529 (9th Cir. 2010) ..........................................................................18

*United States v. Omer*,
    395 F.3d 1087 (9th Cir. 2005) ........................................................................17

*United States v. Pena-Carrillo*,
    46 F.3d 879 (9th Cir. 1995) ............................................................................10

*United States v. Pepe*,
    895 F.3d 679 (9th Cir. 2018) ..........................................................1, 3, 17, 20

## TABLE OF AUTHORITIES (CONTINUED)

*United States v. Pete*,
525 F.3d 844 (9th Cir. 2008) ................................................................12

*United States v. Ray*,
375 F.3d 980 (9th Cir. 2004) ................................................................19

*United States v. Santiago-Becerril*,
130 F.3d 11 (1st Cir. 1997) ..................................................................13

*United States v. Sears, Roebuck & Co.*,
877 F.2d 734 (9th Cir. 1989) ................................................................13

*United States v. Shellef*,
718 F.3d 94 (2d Cir. 2013) ............................................................6, 7, 8

*United States v. Shellef*,
756 F.Supp.2d 280 (E.D.N.Y. 2011) ......................................................6, 7

*United States v. Spanier*,
637 F. App'x 998 (9th Cir. 2016) ............................................................7

*United States v. Tantuwaya*,
2022 WL 22401729 (C.D. Cal. 2022) ....................................................14

*United States v. Taylor*,
487 U.S. 326 (1988) ................................................................9, 10, 11

*United States v. Turner*,
926 F.2d 883 (9th Cir. 1991) ................................................................12

*United States v. Woodruff*,
50 F.3d 673 (9th Cir. 1995) ................................................................16

*United States v. Wright*,
667 F.2d 793 (9th Cir. 1982) ................................................................19

*Vermont v. Brillon*,
556 U.S. 81 (2009) ................................................................14

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

*Zedner v. United States*,

　　547 U.S. 489 (2006)......................................................................................8

**<u>STATUTES AND RULES</u>**

18 U.S.C. § 2423 ....................................................................................... 1, 2

18 U.S.C. § 3161 ..............................................................................5, 6, 7, 8, 9

18 U.S.C. § 3162 ............................................................................................9

28 U.S.C. § 2255 .......................................................................................1, 4

9th Cir. R. 36-3 ...........................................................................................15

Fed. R. Crim. P. 7.........................................................................................16

**<u>OTHER AUTHORITIES</u>**

5 Wayne R. LaFave, Criminal Procedure (4th ed.) ...........................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In October 2015, a jury found defendant Yuzef Abramov guilty of five counts of traveling to Russia and sexually victimizing minor girls, in violation of 18 U.S.C. § 2423(c). Abramov's conduct was horrific and involved, among other things, threats of violence (including murder) and abduction. As this Court said at sentencing, Abramov "was the ultimate predator," and his crimes caused his victims severe "psychological harm" that "could very likely haunt" them "for the rest of their lives." Dkt. 143 at 22-23. Indeed, Abramov's acts were so "egregious," *id*. at 23, that one victim, upon seeing Abramov for the first time in the courtroom, suffered a "hysterical breakdown" that "was an honest spontaneous emotional response to seeing her rapist who had threatened to kill her parents and cut off her head and use it for a soccer ball if she ever told anyone about what he had done to her," Dkt. 196 at 12.

At sentencing, this Court found Abramov's conduct so culpable that the Court imposed the longest permissible sentence: the statutory maximum 30-years on each of the five Section 2423(c) counts, all to run consecutively, for a total of 150 years. Dkt. 143 at 16-17. In imposing that sentence, the Court noted, among other things, that Abramov's victims "fear[] that [he] may one day be released from custody and will seek his revenge upon each of them," and the Court "want[ed] to communicate" to the victims "that there is literally no possibility that this defendant will be in a position to ever come after them again. The purpose of this specific sentence is to demonstrate to them that they are now safe from him." *Id*. at 13.

After Abramov unsuccessfully pursued relief on direct appeal, in the Supreme Court, and from this Court under 28 U.S.C. § 2255, the Ninth Circuit reversed the Section 2255 denial and vacated Abramov's convictions due to ineffective assistance of appellate counsel for failing to have raised a claim of instructional error based on *United States v. Pepe*, 895 F.3d 679 (9th Cir. 2018), which postdated the verdict in this case but predated resolution of Abramov's direct appeal. *Abramov v. United States*, 2025 WL

1779782 (9th Cir. 2025) ("*Abramov II*"). That instructional error involved whether Abramov was traveling at the time he victimized these minor girls; neither this Court nor the Ninth Circuit has expressed any doubt that he did, in fact, victimize the girls as the jury unanimously found.

This case has now returned to a pre-trial posture, a full decade since Abramov's conviction. The traumatized victims who believed for ten years that this case was finally behind them have to be located to assess their desire and ability to testify. This is not something that can simply be done by way of a phone call from the government attorneys to the victims, but instead involves coordination between the United States and the Russian Federation pursuant to the U.S.-Russia Mutual Legal Assistance Treaty (MLAT). That process takes time and is currently underway.

Abramov now moves to dismiss the charges, arguing that dismissal is required under the Speedy Trial Act and the Speedy Trial Clause; because the indictment and the grand jury proceedings were defective; and generally as an exercise of this Court's discretion. His arguments lack merit.

## BACKGROUND

### I.   THE INITIAL DISTRICT COURT PROCEEDINGS

On April 29, 2014, a federal grand jury returned an indictment charging Abramov with five counts of traveling in foreign commerce from the United States to Russia and engaging in illicit sexual conduct with a minor girl, in violation of 18 U.S.C. § 2423(c), and one count of traveling in interstate and foreign commerce for the purpose of engaging in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b). Dkt. 9. The indictment alleged that Abramov committed the Section 2423(c) offenses—the offenses relevant here—between 2009 and 2011. *Ibid*.

At the time of the charged conduct, Section 2423(c) made it a crime for a United States citizen to "travel[] in foreign commerce, and engage[] in any illicit sexual conduct with another person." 18 U.S.C. § 2423(c) (2006). In *United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006), the Ninth Circuit held that this version of Section 2423(c) did "not

require that the conduct occur *while* traveling in foreign commerce." *Id*. at 1107. Instead, it sufficed for the government to prove that the defendant "at some point traveled in foreign commerce *and thereafter* engaged in any illicit sexual conduct." *United States v. Pepe*, 895 F.3d 679, 682 (9th Cir. 2018) (citing *Clark*, 435 F.3d at 1107).

Before trial, Abramov moved to dismiss the indictment on the ground that he was not "traveling" when he committed the illicit sexual acts. Dkt. 47. This Court denied the motion. *Ibid.*

At trial, the Court instructed the jury that to convict on the Section 2423(c) counts, it had to find that Abramov "is a United State[s] citizen"; that he "traveled in foreign commerce from the United States to Russia"; and that, "while [he] was in Russia, he engaged in illicit sexual conduct with" the charged victim. Dkt. 196 at 5. The jury found Abramov guilty on all five Section 2423(c) counts and on the Section 2423(b) count. *Id.* at 1. This Court subsequently granted Abramov's motion for judgment of acquittal on the Section 2423(b) count, concluding that the evidence was insufficient to prove that he traveled "for the predominant purpose of engaging in illicit sexual conduct," *ibid.*, as that statute required at the relevant time.

The Court then sentenced Abramov to the maximum permissible sentence of 150 years. Dkt. 143 at 16-17.

## II.    THE DIRECT APPEAL

Abramov appealed, arguing, as relevant here, that this Court should have dismissed his indictment on the ground that "he resided and was domiciled in Russia and thus did not 'travel' to Russia" for purposes of Section 2423(c). *United States v. Abramov*, 741 F. App'x 531, 532 (9th Cir. 2018) ("*Abramov I*") (punctuation omitted). The Ninth Circuit disagreed, holding that, viewing the facts in the light most favorable to the government, Abramov "resided in Los Angeles, where he had a driver's license and where his children and ex-wife lived." *Ibid*. The court also noted that Abramov had "asserted in a 2013 letter to his member of Congress that, though he has 'visited' Russia several times, he has been a permanent resident of Los Angeles since 2000, and the

3

charged conduct took place several years after that." *Ibid*. And the court explained that Abramov "traveled to Russia from California before each of the charged acts, which took place soon after his arrival in Russia, and then returned to California after each of the charged acts." *Ibid*.

Relatedly, and although the Ninth Circuit had ordered the parties "to file supplemental briefs on the effect, if any, of … *Pepe* … on this case," *see* Order, 9th Cir. No. 16-50104 (July 11, 2018), the Ninth Circuit noted that Abramov did not "challenge on appeal the jury instructions at his trial" and had therefore "waived or forfeited any claim of erroneous jury instructions." *Abramov I*, 741 F. App'x at 532 n.2.

Abramov subsequently petitioned for a writ of certiorari in the Supreme Court, but the Court denied review. *Abramov v. United States*, 589 U.S. 976 (Oct. 7, 2019).

### III.   POST-CONVICTION PROCEEDINGS

On October 6, 2020, Abramov moved for relief under 28 U.S.C. § 2255. Dkt. 172. As relevant here, he argued that (i) in light of *Pepe*, his Section 2423(c) convictions should be vacated due to insufficiency of the evidence and improper jury instructions; and (ii) his appellate counsel was constitutionally ineffective for not having raised a *Pepe*-based instructional challenge on direct appeal. Dkt. 172-2.

On September 12, 2022, this Court denied relief. Dkt. 196. As relevant here, the court noted that (i) there were sufficient facts to support the verdict; (ii) Abramov's *Pepe*-based instructional claim was waived and meritless; and (iii) "[t]he [e]vidence of [g]uilt [w]as [p]alpable" and included multiple victims' "graphic testimony recounting their abusive encounters with defendant." Dkt. 196 at 3-12.

After the Court denied Abramov a certificate of appealability, Dkt. 198, Abramov appealed, and the Ninth Circuit granted the certificate "on the issue of whether Abramov received ineffective assistance of appellate counsel on direct appeal." *Abramov II*, 2025 WL 1779782, at *1. The Ninth Circuit subsequently vacated the convictions and remanded for further proceedings. *Id*. at *3.

In so doing, the Ninth Circuit first held that appellate counsel had provided constitutionally ineffective performance by failing to make a *Pepe*-based instructional claim on direct appeal. *Abramov II*, 2025 WL 1779782, at *1. Second, the court held that the ineffective performance caused Abramov prejudice: "[t]he instruction in this case was plainly deficient in light of *Pepe*, and had appellate counsel raised the issue, the direct appeal panel would have been required to vacate Abramov's conviction unless the government demonstrated that the error was harmless beyond a reasonable doubt." *Id*. at 2. The court further concluded that the error was not harmless because "[t]here was evidence that Abramov" lived in Russia during the indictment period, "[a]lthough there also was substantial evidence from which a reasonable jury could have found that Abramov was in fact traveling when he committed the charged offenses." *Ibid*.

**IV.   POST-VACATUR PROCEEDINGS**

The Ninth Circuit issued the mandate on August 19, 2025. Dkt. 203. On November 13, 2025, Abramov moved to dismiss the indictment, arguing that (i) dismissal is required under the Speedy Trial Act and the Sixth Amendment's Speedy Trial Clause; (ii) under *Pepe*, the indictment is defective and the grand jury was misinstructed; and (iii) the Court has, and should exercise, discretion under Section 2255 to dismiss the charges. CV Dkt. 35.

Abramov's arguments are unavailing.

**ARGUMENT**

**I.   ABRAMOV'S SPEEDY TRIAL CLAIMS LACK MERIT.**

Abramov argues (CV Dkt. 35 at 9-13) that the Court should dismiss the indictment under the Speedy Trial Act and the Sixth Amendment's Speedy Trial Clause. Both claims fail.

    **A.   The Speedy Trial Act**

        1.   <u>Statutory Overview</u>

The Speedy Trial Act, 18 U.S.C. § 3161(e), provides that if a defendant "is to be tried again following an appeal or a collateral attack, the trial shall commence within

5

seventy days from the date the action occasioning the retrial becomes final." However, "the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical." *Ibid*. Courts have "considerable discretion" in determining whether an extension is warranted under this provision. *United States v. Shellef*, 718 F.3d 94, 105 (2d Cir. 2013). For purposes of Section 3161(e), "[a] decision of [the Ninth Circuit] becomes final … on the date that the mandate issues." *United States v. Lloyd*, 125 F.3d 1263, 1265 (9th Cir. 1997).

        2.    <u>The Court can, and should, extend the deadline from 70 to 180 days.</u>

    a. The Ninth Circuit issued the mandate in *Abramov II* on August 19, 2025. Dkt. 203. The 70-day clock therefore started that day and ran through October 28, 2025, absent excludable delay under 18 U.S.C. § 3161(h).

    But this Court should exercise its authority under Section 3161(e) to "extend the period for retrial not to exceed" 180 days from August 19, 2025—which would expire on February 15, 2026, absent any other exclusions. Such an extension is warranted because the "unavailability of witnesses or other factors resulting from passage of time" made trial with within seventy days "impractical." 18 U.S.C. § 3161(e). Significant time has passed since Abramov's October 2015 trial—more than 10 years ago—and this case, which this Court previously designated complex under 18 U.S.C. § 3161(h)(7)(B)(ii), Dkt. 24, involves foreign witnesses and exclusively foreign victims, contact with whom can only be done through coordination between the United States and the Russian Federation pursuant to the U.S.-Russia MLAT. As such, a retrial within seventy days was impractical.

    b. Abramov contends (CV Dkt. 35 at 10) that because the 70-day period has expired, this Court lacks the authority to extend that deadline to 180 days. As multiple courts have made clear, he is wrong. "[Section] 3161(e) extensions may be granted even after the initially specified 70-day period for retrial has passed, provided that the

6

requisite impracticality finding is based on factors arising before or within that initial period." *Shellef*, 718 F.3d at 102; *see United States v. Ginyard*, 572 F.Supp.2d 30, 33-36 (D.D.C. 2008); *United States v. Shellef*, 756 F.Supp.2d 280, 292-297 (E.D.N.Y. 2011). Abramov has not cited any case to have considered the question and held otherwise, nor have we found any such case.

This result follows from the plain text of Section 3161(e). *Shellef*, 718 F.3d at 102. Nothing in Section 3161(e) requires that a district court grant the extension only within the initial 70-day period, and if Congress had intended such a limitation, Congress presumably would have said so, as Congress had done elsewhere. *See id.* at 103 (citing examples); *Ginyard*, 572 F.Supp.2d at 35. "In the absence of any such language temporally limiting the exercise of judicial discretion," there is "no statutory basis for holding that a court may identify the 'factors resulting from passage of time that shall make trial within seventy days impractical' only within the initial 70-day period." *Shellef*, 718 F.3d at 103 (quoting 18 U.S.C. § 3161(e)) (punctuation omitted). And here, the impracticality of a trial within 70-days based on the unavailability of foreign witnesses and other factors resulting from the passage of ten years since the first trial arose well before the expiration of the initial 70 days.

c. Abramov relies (CV Dkt. 35 at 10) on *United States v. Spanier*, 637 F. App'x 998 (9th Cir. 2016), and *United States v. Frey*, 735 F.2d 350 (9th Cir. 1984), which held that a district court cannot make a *nunc pro tunc* ends-of-justice finding under 18 U.S.C. § 3161(h)(7)(A) to fix an unintended violation of the Speedy Trial Act. But case law on the ends-of-justice provision is "not relevant to analysis of Section 3161(e))." *Ginyard*, 572 F.Supp.2d at 34 (citing *United States v. Holley*, 986 F.2d 100, 103 (5th Cir. 1993) ("We believe that those cases do not apply to this situation.")); *Shellef*, 756 F.Supp.2d at 292-295.

Section 3161(h)(7) authorizes a court to grant an ends-of-justice continuance "on the basis of [the court's] findings" that such a continuance is warranted, but only if the court "sets forth, in the record of the case, … its reasons for finding" that the

7

continuance is warranted, 18 U.S.C. § 3161(h)(7)(A), and the court must make the requisite findings "before granting the continuance," *Zedner v. United States*, 547 U.S. 489, 506-507 (2006). But "Section 3161(e) contains no limiting language comparable to § 3161(h)(7)(A)'s phrase 'unless the court' that signals Congress's intent to limit the exercise of judicial extension discretion," *Shellef*, 718 F.3d at 104, and "[t]he absence of parallel language in Section 3161(e) strongly suggests that Congress did not intend to prevent the granting of Section 3161(e) continuances after the initial seventy-day period for trial had passed," *Ginyard*, 572 F.Supp.2d at 35.

Moreover, the concern that the "overuse of the broad discretion" to grant ends-of-justice continuances "could undermine the strict time limits of the Act," and that courts could engage in "abuses of" that subsection, *Frey*, 735 F.2d at 352, are unfounded in the context of a Section 3161(e) extension. Ends-of-justice continuances contain no statutorily enumerated fixed end point, but Section 3161(e) does: 180 days. *Shellef*, 718 F.3d at 104. Also, a court can enter multiple ends-of-justice continuances, but a Section 3161(e) extension can only be entered once. And whereas an ends-of-justice continuance involves balancing multiple factors, *see* 18 U.S.C. § 3161(h)(7)(B), a Section 3161(e) extension involves a much more narrowly circumscribed inquiry. *Shellef*, 718 F.3d at 104; *Ginyard*, 572 F.Supp.2d at 35-36.

In sum, "neither the statutory text nor unwarranted concerns about the conduct of district courts support construing 18 U.S.C. § 3161(e) to limit the exercise of a district court's extension discretion under that provision to the initial 70-day period for retrial." *Shellef*, 718 F.3d at 105.

d. Abramov contends (CV Dkt. 35 at 10-11) that, even if this Court has the authority to extend the deadline to 180 days, the Court should decline to do so because the government did not move to extend the timeline during the initial 70-day window and because the government has not tried to secure, or will not be able to secure, the presence of its witnesses at trial. These arguments are unfounded.

First, Abramov cites no authority suggesting it matters that the government did not seek the extension during the initial 70-day window; indeed, Section 3161(e) does not even require the government to seek the extension in the first instance. *Compare* 18 U.S.C. § 3161(h)(8) (exclusion for foreign-located evidence, "upon an application of a party"). Second, on September 9, 2025, three weeks after the Ninth Circuit issued the mandate, the United States submitted its MLAT request to Russia for assistance in locating and communicating with victims and witnesses. Engagement between the United States and Russia remains ongoing with respect to this request, and there is every reason to believe that Russia will assist the United States pursuant to the MLAT request, much as Russia did in advance of Abramov's October 2015 trial.

3. <u>If the Court disagrees with the government, it should dismiss the indictment without prejudice.</u>

If the Court determines that the Speedy Trial Act has been violated, the remedy should be to dismiss the indictment without prejudice. 18 U.S.C. §§ 3161(e), 3162(a)(2). In determining whether to dismiss with or without prejudice, the Court must consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Ibid.* The Court should also "consider prejudice to the defendant from the delay." *United States v. Alvarez-Perez*, 629 F.3d 1053, 1062 (9th Cir. 2010) (citing *United States v. Taylor*, 487 U.S. 326, 333-334 (1988)).

Here, if the Court is inclined to dismiss, these factors tilt sharply in favor of dismissal without prejudice, which "is not a toothless sanction," *Taylor*, 487 U.S. at 342, and which far better accommodates the interests and equities at stake.

First, the seriousness of Abramov's offenses is, as this Court recognized at sentencing, "self-evident." Dkt. 143 at 22. "As found by the jury, [Abramov] knowingly used force, threatened or placed the victims in fear that some person would be killed or hurt in order to cause these girls to have sex." *Ibid*. His acts were "savage," *id*. at 15, as he "forcibly engaged in sex with the young girls utilizing planning and concealment" and

he "targeted and cultivated his victims, later threatening them and forcing himself upon them," *id*. at 22. Abramov "was the ultimate predator." *Ibid*.; *see id*. at 23 (noting "the predatory nature of his actions"). And he caused his victims severe "psychological harm" that "could very likely haunt [them] for the rest of their lives," and the court sought to assure them that "there is literally no possibility that this defendant will be in a position to ever come after them again"—"they are now safe from him." *Id*. at 13, 22-23. One victim even had a "hysterical breakdown" upon seeing Abramov in the courtroom, and this breakdown "was an honest spontaneous emotional response to seeing her rapist who had threatened to kill her parents and cut off her head and use it for a soccer ball if she ever told anyone about what he had done to her." Dkt. 196 at 12.[1]

Further, the Court imposed the longest permissible sentence: 30 years on each count, all to run consecutively to one another, for a total of 150 years. Dkt. 143 at 16-17. This sentence—and the statutory maximum 30-year sentence per count—demonstrate seriousness and weigh heavily against dismissal with prejudice. *See, e.g.*, *United States v. Lewis*, 611 F.3d 1172, 1180 (9th Cir. 2010) (offenses carrying five-year statutory maximum are "serious" for purposes of Section 3162(a)); Dkt. 143 at 22 (Court: "The seriousness of the offenses is self-evident and reflected in the Guidelines range of 150 years.").

Second, the facts and circumstances also counsel against dismissal with prejudice. The government did not engage in any "purposeful wrongdoing" with respect to any delay. *United States v. Pena-Carrillo*, 46 F.3d 879, 882 (9th Cir. 1995). Nor did the government exhibit "bad faith" or a "truly neglectful attitude"; at worst, there was the type of "isolated unwitting violation" that counsels in favor of dismissal without prejudice. *Taylor*, 487 U.S. at 338-339. Indeed, the government's September 9, 2025 MLAT request to Russia, submitted just three weeks after the mandate from *Abramov II* issued, demonstrates the government's diligence.

---

[1] The Court's assessment of this incident belies Abramov's effort (CV Dkt. 35 at 19 n.6) to cast it as a fabricated "histrionic performance."

10

Third and fourth, dismissal without prejudice would far better accommodate the administration of the Speedy Trial Act and the administration of justice; relatedly, any delay has not unfairly prejudiced Abramov. The government did not act in bad faith (and Abramov has not suggested otherwise), and "[i]n a case like this—where the evidence does not suggest that [any Speedy Trial Act] violation was the result of bad faith on the part of the government—the administration of justice and the consideration of the Speedy Trial Act do not warrant dismissing the case with prejudice." *United States v. Allen*, 159 F.4th 625, 632 (9th Cir. 2025); *see Alvarez-Perez*, 629 F.3d at 1063. And any delay has not impeded Abramov's ability to defend himself or otherwise prejudiced him. *Taylor*, 487 U.S. at 341; *Lewis*, 611 F.3d at 1180.

Therefore, if the Court believes (contrary to the government's argument) that the Speedy Trial clock has expired because it cannot extend the time to 180 days, the appropriate remedy is dismissal without prejudice.

**B.    The Sixth Amendment's Speedy Trial Clause**[2]

In assessing whether a defendant's Sixth Amendment Speedy Trial Clause right has been violated, courts balance four factors: (i) the length of the delay; (ii) the reason for the delay; (iii) the defendant's assertion of his right; and (iv) prejudice to the defendant. *United States v. Lam*, 251 F.3d 852, 855 (9th Cir. 2001) (citing *Barker v. Wingo*, 407 U.S. 514, 529 (1972)). None of these factors are individually necessary or sufficient; instead, "they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 856 (quoting *Barker*, 407 U.S. at 533).

The Speedy Trial Clause is less protective to a defendant than the Speedy Trial Act, *Allen*, 159 F.4th at 630 n.5, and "it will be an unusual case in which" the Act is

---

[2] In *Betterman v. Montana*, 578 U.S. 437 (2016), the Supreme Court held that the Speedy Trial Clause does not apply to sentencing because the right "detaches upon conviction," and the Court reserved "whether the right reattaches upon renewed prosecution following a defendant's successful appeal, when he again enjoys the presumption of innocence." *Id*. at 439, 441 n.2. For purposes of this motion, the government assumes that the Clause so applies.

11

satisfied but the Speedy Trial Clause is not, *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982). This is not that unusual case.

### 1.     Length of Delay

In the context of a remand following an appellate court's vacatur of convictions, the period of delay is properly measured from the time the appellate mandate issues, as that is what returns jurisdiction to the district court. *See, e.g.*, 5 Wayne R. LaFave, Criminal Procedure § 18.1(c) (4th ed.) (discussing Speedy Trial Clause and explaining: "Upon appellate reversal of a conviction, the speedy trial clock regarding retrial generally starts as of the time of remand.") (citing, *e.g., Palmer v. Clarke*, 408 F.3d 423 (8th Cir. 2005)); *People of Territory of Guam v. Viloria*, 1996 WL 104529, at *2 (D. Guam 1996). *Cf. United States v. Pete*, 525 F.3d 844, 853 (9th Cir. 2008) (issuance of the mandate returns jurisdiction to the district court).[3]

The length of delay "is a threshold issue," and only if the delay "passes a threshold point of presumptively prejudicial delay" does a court consider the other *Barker* factors. *United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003) (punctuation omitted); *see Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."). A "six-month delay" is "borderline" too long, *Lam*, 251 F.3d at 856 (quotation marks omitted); ordinarily "delays approaching one year are presumptively prejudicial," *Gregory*, 322 F.3d at 1161-1162. Here, the 86-day period between *Abramov II*'s issuance of the mandate and Abramov's motion to dismiss does not cross the presumptive-prejudice threshold. *Cf. United States v. Turner*, 926 F.2d 883, 889 (9th Cir. 1991) (four-month delay "is insufficient for a Sixth Amendment violation"); *Lam*, 251 F.3d at 856 n.5. This is further supported by the fact that Section 3161(e) allows for 180 days plus any other excludable time pursuant to 3161(h) in the first place. Abramov's Speedy Trial Clause claim therefore fails at the outset.

---

[3] Further supporting this, in reserving the issue in *Betterman*, the Supreme Court referenced that the right might "reattach[]" following a successful defense appeal. 578 U.S. at 441 n.2.

Regardless, and as set forth below, his claim fails even under a complete *Barker* analysis.

### 2. Reasons for the Delay

Trial in this case took place more than 10 years ago. The reason for the delay now primarily involves the difficulty in locating witnesses—including Abramov's victims—who we believe are still living in Russia. This witness-related complexity presents a "valid reason" that "should serve to justify appropriate delay." *Barker*, 407 U.S. at 531; *see United States v. Myers*, 930 F.3d 1113, 1119-1120 (9th Cir. 2019).

### 3. Assertion of the Right

Following remand, Abramov first asserted his speedy trial right in his motion to dismiss. But courts "are particularly skeptical of those who raise the [speedy trial] issue for the first time in a motion to dismiss." *United States v. Carpenter*, 781 F.3d 599, 614 (1st Cir. 2015) (citing *Barker*, 407 U.S. at 534-535); *see United States v. Hoskins*, 44 F.4th 140, 154 (2d Cir. 2022) ("Hoskins did not assert his [Speedy Trial Act] rights until his motion to dismiss the indictment in July 2019, which weighs against him in the *Barker* analysis."); *United States v. Santiago-Becerril*, 130 F.3d 11, 22 (1st Cir. 1997) ("A defendant should give some indication, prior to his assertion of a speedy trial violation, that he wishes to proceed to trial." (citing, *e.g.*, *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 740 (9th Cir. 1989)). Here, the first thing that Abramov filed in this Court following the Ninth Circuit's remand was his motion to dismiss. This "suggests that [he] did not want a speedy trial until [his] right to a speedy trial became a possible means by which to obtain dismissal of the charges against [him]." *United States v. Colombo*, 852 F.2d 19, 26 (1st Cir. 1988).[4] On these facts, Abramov's newly articulated assertion of the speedy trial right is at most neutral to his claim for relief. *Gregory*, 322 F.3d at 1162.

---

[4] Indeed, the history of this case shows multiple instances in which Abramov stipulated to speedy trial continuances and otherwise obtained extensions of time during the appellate proceedings. *See, e.g.*, Dkts. 25, 37, 43; Orders, 9th Cir. No. 16-50104 (June 30, 2016; October 5, 2016; Jan. 20, 2017; May 19, 2017; Aug. 25, 2017; Oct. 16, 2017); Order, S. Ct. No. 19-256 (June 21, 2019).

4.    Prejudice

Given the short delay at issue, Abramov must show actual prejudice, which involves consideration of oppressive pretrial incarceration, anxiety and concern of the accused, and—most importantly—the possibility that the accused's defense will be impaired. *Myers*, 930 F.3d at 1120; *Gregory*, 322 F.3d at 1162-1163. But the prejudice inquiry involves only "prejudice caused by the delay that triggered the *Barker* inquiry, not simply any prejudice that may have occurred before the trial date but unrelated to the fact of the delay itself." *Gregory*, 322 F.3d at 1163.

This factor favors the government. Abramov has not suffered any constitutionally relevant prejudice resulting from the 86-day period between issuance of the appellate mandate and his motion. Perhaps sensing this, Abramov instead asks (CV Dkt. 35 at 11-12) the Court to assess prejudice dating back more than 11 years, to when he was initially detained.[5] But whatever prejudice he invokes did not result from the 86-day period that matters here. And to the extent Abramov speculates about the difficulties in securing witnesses, any such "possibility of prejudice is not sufficient"; moreover, his concern reflects a "two-edged sword"—the government faces the same concern, which may impede the government's ability to prove its case beyond a reasonable doubt—and therefore militates against any finding of prejudice. *Loud Hawk*, 474 U.S. at 315; *see Barker*, 407 U.S. at 521 (delay "may work to the accused's advantage" because prosecution "witnesses may become unavailable or their memories may fade," which may make it difficult for the government to "carr[y] the burden of proof").

---

[5] Also, Abramov overlooks that much of that 11-year period involved time intervals—his interlocutory appeal (which the Ninth Circuit dismissed for lack of jurisdiction), direct appeal, certiorari petition, Section 2255 motion, and appeal—attributable to him. *See Vermont v. Brillon*, 556 U.S. 81, 90 (2009); *United States v. Loud Hawk*, 474 U.S. 302, 313 (1986); *United States v. Tantuwaya*, 2022 WL 22401729, at *5 n.4 (C.D. Cal. 2022).

## II.   ABRAMOV'S DEFECTIVE-INDICTMENT AND GRAND-JURY CLAIMS ARE UNAVAILING.

Abramov argues (CV Dkt. 35 at 13-15) that this Court should dismiss the indictment because it did not allege that he "was not a resident of Russia at the time of the alleged offense conduct" and because the grand jury was not instructed that it had "to find [he] was not a resident of Russia." His arguments fail.

### A.   Abramov's defective-indictment claim lacks merit.

#### 1.   The law-of-the-case doctrine forecloses Abramov's claim.

"Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012) (quotation marks omitted). "For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in the previous disposition." *Ibid.* (punctuation omitted). "A collateral attack is the 'same case' as the direct appeal proceedings for purposes of the law of the case doctrine." *Id.* at 500. The doctrine, which applies to appellate decisions that are published and unpublished, 9th Cir. R. 36-3(a); *see Jingles*, 702 F.3d at 500, 504, controls here and forecloses Abramov's claim.

On direct appeal, Abramov asserted that this Court "erred by denying his motion to dismiss the indictment," arguing that "the statute does not apply to his conduct because, even though he is a United States citizen, he resided and was domiciled in Russia and thus did not travel to Russia." *Abramov I*, 741 F. App'x at 532 (punctuation omitted); *see* CV Dkt. 35 at 6-7. After having ordered and received supplemental briefing "on the effect, if any, of … *Pepe* … on this case," Order, 9th Cir. No. 16-50104 (July 11, 2018), the Ninth Circuit rejected Abramov's indictment challenge, *Abramov I*, 741 F. App'x at 532, which mirrors his challenge here, *see* CV Dkt. 35 at 14.

The Ninth Circuit has therefore already considered the effect of *Pepe* on Abramov's indictment, rejected the same argument that Abramov makes here, and held that the indictment in this case is valid. That holding is law of the case and forecloses

15

Abramov's claim for relief.[6]

## 2. In any event, Abramov's claim fails on the merits.

Law of the case aside, *Abramov I*'s determination was correct.

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (punctuation omitted). When the indictment "tracks the words of the statute charging the offense, the indictment will be held sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense." *Ibid.* (quotation marks omitted); *see United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995).

Here, each of the Section 2423(c) counts alleged that Abramov, "a United States citizen, knowingly traveled in foreign commerce from the United States to Russia and engaged in illicit sexual conduct" with a girl under the age of 18. Dkt. 9. This tracks the words of the statute charging the offense. As noted, Abramov argues only (CV Dkt. 35 at 14) that the indictment is defective because it did not allege, as he says *Pepe* requires, that he "was not a resident of Russia at the time of the alleged offense conduct." But as this Court, the Ninth Circuit, and at least one other district court in the Ninth Circuit have made clear, under *Pepe* the relevant statutory element was and remains *travel*—not *residency*—and that is what the indictment alleged. *See* Dkt. 196 at 6 ("[T]he elements [of Section 2423(c)] do not require the jury to make a finding the defendant was a

---

[6] None of the exceptions to the law-of-the-case doctrine—when the first decision "is clearly erroneous and its enforcement would work a manifest injustice"; when "intervening controlling authority makes reconsideration appropriate"; and when "substantially different evidence was adduced at a subsequent trial," *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc)—apply here.

16

resident of the foreign country where the conduct took place.");[7] *United States v. Lindsay*, 931 F.3d 852, 860-861 (9th Cir. 2019) (under *Pepe*, Section 2423(c) "proscribes illicit sexual conduct *while* traveling, where traveling is broader than transit and encompasses the entire trip or tour"); *United States v. Boyajian*, 2023 WL 3915966, at *1 (9th Cir. 2023) (unpublished) (Section 2423(c) jury instruction "was erroneous because it would allow conviction even if Boyajian had stopped traveling at the time of the offense," but error was harmless because "[t]he evidence that Boyajian was traveling in Cambodia when he committed the offense was overwhelming"); *United States v. Johnson*, 823 F. App'x 485, 488-489 (9th Cir. 2020) (unpublished) (sufficient evidence to sustain Section 2423(c) conviction under *Pepe* where evidence established "that Johnson was in fact traveling when the illicit sexual acts occurred"); *Pepe*, 895 F.3d at 682 (Section 2423(c) applies only if the U.S. citizen was "traveling—meaning something more than being in transit—when they had illicit sex"); *id.* at 691 (on remand, government "will need to prove that he was still traveling when he committed illicit sexual conduct"); *United States v. Johnson*, 2019 WL 267875, at *2 (D. Oregon 2019) ("The focus of the statute is not on residency, but on travel." (citing *Pepe*, 895 F.3d at 691)), *aff'd*, 823 F. App'x 485 (9th Cir. 2020).

Abramov's citations (CV Dkt. 35 at 13) to *United States v. Omer*, 395 F.3d 1087 (9th Cir. 2005) (per curiam), and *United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999), are unavailing. Those cases hold that when an indictment is timely challenged, the "indictment's *complete failure* to recite an essential element of the charged offense … requir[es] dismissal." *Omer*, 395 F.3d at 1088 (emphasis added) (citing *Du Bo*, 186 F.3d at 1179). Here, however, the indictment charged the relevant element—travel. There was

---

[7] Abramov maintains his position that this Court, in granting a judgment of acquittal on the Section 2423(b) count, found that he lived in Russia. CV Dkt. 35 at 2, 17. This Court has already faulted Abramov for "persist[ing] in this misrepresentation." Dkt. 196 at 4. The Ninth Circuit, too, has rejected this misrepresentation—twice. *Abramov II*, 2025 WL 1779782, at *2; *Abramov I*, 741 F. App'x at 532 n.1.

no "failure" to charge a required element at all, much less was there the type of "complete failure" at issue in *Omer* and *Du Bo*.

### B.    Abramov's grand-jury claim lacks merit.

Abramov maintains (CV Dkt. 35 at 14-15) that the grand jury should have been instructed "to find that [he] was not a resident of Russia" and that if the grand jury were so instructed, "there is every likelihood they would not have indicted." His argument fails.

First, and as explained, the relevant statutory element is travel, not residency. Abramov's starting premise—that the grand jury should have been instructed that it had to find that Abramov was not a resident of Russia—is wrong. Nothing in the statutory language of Section 2423(c), *Pepe*, or the Ninth Circuit's rulings in this case require such a grand jury instruction.

Second, as a factual matter, there is every reason to believe that had the grand jury been so (mis)instructed, it *still* would have returned the indictment charging the five Section 2423(c) counts. In *Abramov II*, the Ninth Circuit explained that there was "substantial evidence from which a reasonable jury could have found that Abramov was in fact traveling when he committed the charged offenses." 2025 WL 1779782, at *2. The Ninth Circuit similarly concluded in *Abramov I*. 741 F. App'x at 532. So did this Court. Dkt. 196 at 3. It therefore stands to reason that the grand jury would have found probable cause to indict. *Cf. United States v. Navarro*, 608 F.3d 529, 539-540 (9th Cir. 2010) (petit jury's guilty verdict *a fortiori* means the grand jury had probable cause to indict).

For these same reasons, even if there was an erroneous grand jury instruction, Abramov cannot show the requisite prejudice. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) ("We hold that, as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."); *id.* at 256 (prejudice occurs "only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that

18

the decision to indict was free from the substantial influence of such violations" (quotation marks omitted)); *United States v. Larrazolo*, 869 F.2d 1354, 1357-1359 (9th Cir. 1989), overruled on other grounds as noted in *United States v. Ray*, 375 F.3d 980, 994 (9th Cir. 2004). Nor—especially given Abramov's assumption that the grand jury was instructed consistent with the Ninth Circuit's then-binding decision in *Clark*, and that the statutory language of 2423(c) was not altered under *Pepe*—is there any basis to presume that "the conduct of the prosecuting attorney was flagrant to the point that the grand jury was deceived in some significant way." *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982) (quotation marks omitted).

## III.    Abramov's other arguments for dismissal lack merit.

Abramov's remaining arguments also fail.

First, for the reasons set forth *supra* at 5-9, dismissal is unwarranted under the Speedy Trial Act or the Speedy Trial Clause.

Second, Abramov asserts (CV Dkt. 35 at 15-18) that there is "overwhelming" evidence that he resided in Russia at the time of the charged offenses and that "there is no chance the government will be able to meet its burden to prove that [he] was not a resident of Russia." But as noted *supra* at 16-18, (i) Section 2423(c) and *Pepe* focus on "travel," not residency; and (ii) there is substantial evidence showing that Abramov was traveling within the meaning of *Pepe* when he committed the charged offenses. If, on retrial, the government cannot prove that Abramov was traveling pursuant to *Pepe* when he committed the charged offenses, the jury will be obligated to acquit. But Abramov is no more entitled to a fact-based dismissal now than the government would be to a fact-based conviction now. Trial is the appropriate context in which these issues will be resolved, which is exactly what *Abramov II* stands for.

Third, Abramov is not entitled to dismissal simply because he disagrees with or discredits his victims' testimony. *See* CV Dkt. 35 at 18-19. Nothing in any of this Court's or the Ninth Circuit's decisions in this case suggest that Abramov's convictions

19

are infirm because of witness-credibility problems.[8] And Abramov's post-trial declarations—including his own, and that of a Russian police officer, CV Dkt. 35 at 3-4, 16-17—similarly provide no basis for dismissal now. At any retrial, Abramov will be free to present evidence, if he wishes, subject to the Rules of Evidence and the United States Constitution. But these documents do nothing to support dismissal now.

*       *       *

In *Pepe*, the Ninth Circuit vacated the defendant's convictions on instructional-error grounds and remanded to allow the government to retry the defendant and attempt "to prove that he was still traveling when he committed illicit sexual conduct." *See Pepe*, 895 F.3d at 691-692; *Abramov II*, 2025 WL 1779782, at *1. That is the same outcome that *Abramov II* clearly contemplated. *Abramov II*, 2025 WL 1779782, at *1-2. And that outcome—a retrial with a properly instructed jury, not dismissal—is the appropriate outcome here.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny the motion.

---

[8] Abramov asserts (CV Dkt. 35 at 19) that the government declined to introduce certain photographs of him, "presumably because they would not have corroborated the witnesses' accounts." But Abramov objected to the introduction of photographs of his genitals on relevancy grounds, and the district court held the photos inadmissible and the government agreed not to introduce them. Dkt. 112 at 23-26.

Dated: December 12, 2025    Respectfully submitted,

STEVEN J. GROCKI
*Chief*

/s/ Ross B. Goldman
ROSS B. GOLDMAN
Senior Appellate Counsel

/s/ Lauren S. Kupersmith
LAUREN S. KUPERSMITH
Trial Attorney; Acting Deputy Chief

Child Exploitation & Obscenity Section
Criminal Division, U.S. Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA

21

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 11-6.2, the undersigned, counsel of record for the United States, certifies that the brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 12, 2025          /s/ Ross B. Goldman
                                  Ross B. Goldman